# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **BOBBY RAY LINEBERRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:10-cv-0044** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Judge Thomas A. Wiseman, Jr.** |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Bobby Ray Lineberry applied for Social Security Disability Insurance Benefits ("DIB") and Supplement Security Income ("SSI") on February 14, 2006, alleging disability beginning June 1, 2005. The claim was denied initially and upon reconsideration. Upon Plaintiff's request, a hearing was conducted on August 15, 2008 in Nashville, Tennessee before Administrative Law Judge ("ALJ") Barbara Kimmelman. The ALJ issued her decision denying Plaintiff's claim on October 1, 2008. Plaintiff's request for review by the Appeals Council was denied on March 30, 2010, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff filed this action on June 3, 2010, seeking review of that decision pursuant to 42 U.S.C. § 405(g).

Now before the Court is Plaintiff's Motion for Judgment on the administrative record (Doc. No. 7), seeking judicial review of the Commissioner's denial of his claim for DIB and SSI under Titles II and XVI of the Social Security Act (the "Act"), on the grounds that the ALJ erred in failing to properly evaluate a report by mental consultative examiner Gary Smithson, M.A., and in failing to take "proper account" of Plaintiff's illiteracy. (Pl.'s Mem. Supp. Mot. Judgment, Doc. No. 7-1, at 3.) He argues on the basis of these alleged errors that the ALJ's decision is not supported by substantial evidence; he seeks reversal and remand to the Commissioner for a finding that he is disabled as a result of the impairments from which he suffers. In response to the motion, the Defendant Commissioner of Social Security asserts that the agency's decision denying benefits is supported by substantial evidence in the record and should be upheld.

The prior referral of this case to the Magistrate Judge is withdrawn and the Court finds, as

explained below, that the Commissioner applied the appropriate legal standards and the decision is supported by substantial evidence in the record. Plaintiff's motion will therefore be denied and the underlying decision by the ALJ affirmed.

## I.     THE ALJ'S DECISION

The central issue on any appeal of a disability determination is whether substantial evidence supports the ALJ's determination that Plaintiff was not disabled during the relevant time period. To be entitled to benefits, a claimant must be insured for disability at the time she becomes "disabled" within the meaning of the Social Security Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

*Id.* § 423(d)(2)(A).

In making a determination as to disability under the above definition, an ALJ is required to follow a five-step sequential evaluation set out in the Social Security Administration's regulations. 20 C.F.R. § 404.1520. In *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997), the Sixth Circuit summarized the five-step analysis as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id.* at 529 (citing 20 C.F.R. § 404.1520). The claimant has the burden of proving the first four steps.

*Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 147–48 (6th Cir. 1990). At step five, however,

the burden of proof shifts to the Commissioner. *Id.* at 148.

In the present case, in accordance with the applicable framework, the ALJ made the following

specific findings in her written decision issued October 1, 2008:

> 1.      The claimant [met] the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2.      The claimant has not engaged in substantial gainful activity since June 1, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> There is no evidence of work activity after the alleged onset date.
>
> 3.      The claimant has the following severe impairments: degenerative changes in the left shoulder, degenerative arthritis in the cervical spine and fingers of the hands, mild IVS wall hypertrophy, *borderline intellectual functioning*, generalized anxiety disorder, depression, and avoidant personality disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4.      The claimant does not have an impairment or combination of impairments that meets or medical equals one of the listed impairments. . . .
>
> . . . .
>
> 5.      [T]he claimant has the residual functional capacity to: occasionally lift 10 pounds, frequently left 10 pounds, stand or walk 6 hours in an 8-hour workday, and sit about 6 hours in and 8-hour workday, occasionally reach overhead, with diminished grip strength in the non-dominant left hand, and *can perform unskilled work which does not require reading*, with only occasional interaction with the public and occasional adaptation to changes in the work setting.
>
> . . . .
>
> 6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> . . . .
>
> 7.      The claimant was born on March 15, 1964, and was 41 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8.      The claimant has a *limited education* and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> . . . .
>
> 9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10.     Considering the claimant's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

. . . .

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 10–17 (emphasis added).)

## II.     REVIEW OF PLAINTIFF'S MOTION

In his motion for judgment, Plaintiff does not take issue with the ALJ's assessment of Plaintiff's physical abilities or psychological limitations.  Rather, he argues that the ALJ erred by failing to take into proper account Plaintiff's illiteracy, and in failing to properly evaluate the psychological report of Gary Smithson, M.A., which diagnosed Plaintiff as mildly mentally retarded.  Of course, this Court must affirm the ALJ's decision absent a determination that the ALJ failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).  Even if this Court were inclined to reach a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence.  *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).  Accordingly, a district court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### A.     The ALJ Presumed Illiteracy in Framing Plaintiff's Residual Functional Capacity.

In his motion, Plaintiff claims the ALJ found the claimant had "more reading ability than was alleged due to his taking a vocational class," and failed to take into account intelligence testing in high school clearly indicating Plaintiff was illiterate.  (Doc. No. 7-1, at 6.)  It appears that Plaintiff is taking issue with the ALJ's determination that Plaintiff had a "limited" education rather than characterizing him as "illiterate."  (Doc. No. 10, at 11.)

Even if the ALJ erred in this regard, the Sixth Circuit has made it clear that courts are to review agency decision for "harmless error"; they are not required to "convert judicial review of agency action into

a ping-pong game" where "remand would be an idle and useless formality." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969); *see also Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (noting that a plaintiff seeking review of an administrative agency's decision generally has the burden of showing that an error is harmful").

In the present case, if there was an error at all, it was harmless. As set forth above, the ALJ determined that the Plaintiff was capable of "perform[ing] unskilled work which *does not require reading*." (AR 11 (emphasis added).) In other words, the ALJ apparently credited the evidence in the record indicating that Plaintiff is functionally illiterate. At the hearing, the ALJ asked Vocational Expert ("VE") Michelle McBroom-Weiss whether there were jobs in the national and regional economy that could be performed by a person of Plaintiff's age, education,[1] and vocational background, who could lift only ten pounds frequently or occasionally, sit for six hours and stand or walk for six hours in an eight-hour workday, could occasionally reach overhead, had diminished grip strength in his non-dominant hand, was capable of unskilled work with only occasional interaction with the public, and could only work in a job that required occasional adaption to change and *did not require reading*. (AR 48–49.)

The VE identified three jobs that fit those characteristics and are available in significant numbers in the national and regional economies. Thus, the ALJ's implicit finding that Plaintiff probably could read more than he admitted to is simply not material, as it apparently did not inform her assessment of Plaintiff's functional capacity or the identification of unskilled jobs that someone with those capabilities could perform. Substantial evidence in the record supports the ALJ's determination that Plaintiff was unable to read, and the jobs identified accommodated that restriction, among others.

Clearly, the fact that Plaintiff was approaching age 45 at the time of the hearing, is illiterate, and is limited to less than a full range of sedentary work would likely have been sufficient evidence to support a finding of "disabled" as well. In 2008, at the time the ALJ issued her opinion, Plaintiff was 44 and 1/2

---

[1] The education level the VE would have been aware of was based on Plaintiff's testimony at the hearing. He stated that he had completed high school and received a diploma ("They just gave it to me."), but he had attended only special education classes and was not able to read. (AR 34, 25–26.) He also testified that he had done some vocational school "but it wasn't no class really" and he was "supposed to have [learned] electronics" at the vocational school (AR 25–26), implying he did not learn much about electronics.

years old; he was 41 at the time of the alleged disability onset date. The Grid Rules direct a finding of "disabled" for a person aged 45-49 and who is restricted to sedentary, unskilled work, and is able to speak and understand English but is unable to read or write in English. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.17. The Grid Rules direct a finding of "not disabled" for a person under age 45 with the same restrictions, *id.* Rule 201.23, and they further indicate that an illiterate person under age 45 who is limited to less than a full range of sedentary, unskilled work may well be, but is not necessarily "disabled" for purposes of the Social Security Act:

> [A] decision of "disabled" may be appropriate for some individuals under age 45 . . . who do not have the ability to perform a full range of sedentary work. However, the inability to perform a full range of sedentary work does not necessarily equate with a finding of "disabled." Whether an individual will be able to make an adjustment to other work requires an adjudicative assessment of factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base. It requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust, considering his or her age, education and work experience. . . .

*Id.* Rule 201.00(h)(3).

In the present case, the ALJ performed the required individualized assessment by inquiring of the VE whether there were jobs available that would accommodate the physical and mental restrictions identified by the ALJ. Plaintiff does not contest any aspect of the ALJ's hypothetical posed to the VE, other than asserting that Plaintiff should have been considered illiterate, which he was, and that he should have been considered to have mild mental retardation rather than to be functioning at the borderline intellectual level, which determination, as discussed below, is also supported by substantial evidence.

### B. The ALJ Properly Evaluated Gary Smithson's Report

Psychological Examiner Gary Smithson, M.A., L.P.E., conducted a psychological evaluation of Plaintiff on April 17, 2007, and subsequently filed a report reflecting his findings. (AR 289–95.) Part of his evaluation included I.Q. testing which indicated that Plaintiff had a Verbal I.Q. of 65, Performance I.Q. of 63, and a Full Scale I.Q. of 61. With respect to these results, Mr. Smithson stated: "Qualitatively, the current scores suggest the likelihood of intellectual functioning within the Mildly Retarded range." (AR 293.) He also noted that Plaintiff

> presented in a credible manner, and overall findings appear to be consistent and reliable. . . . Results of intellectual testing suggest that his overall intellectual functioning falls within the Mildly Retarded range. Results of achievement testing, in conjunction with

intellectual assessment, suggested learning disability in the area of arithmetic. . . . His reading comprehension skills appear to be similar to that which might be expected from the WAIS-III FSIQ score (Passage Comprehension SS = 64). Overall findings suggest that [Plaintiff] meets DSM-IV-TR diagnostic criteria for Generalized Anxiety Disorder, Alcohol Abuse (in full remission x7 years); Avoidant Personality Disorder; and Mild Mental Retardation. It is doubtful that his level of cognitive abilities will improve in the foreseeable future. Prognosis appears to be somewhat guarded.

(AR 298.)

Plaintiff contends that the ALJ improperly Mr. Gary Smithson's report. Plaintiff's argument in that regard is, in fact, not entirely clear, but he appears to be asserting that the ALJ erred in rejected Mr. Smithson's conclusion that Plaintiff's I.Q. test results placed him in the "mild mental retardation" range. Instead, the ALJ accepted the evidence in the record indicating Plaintiff has borderline intellectual functioning.[2]

In assessing the evidence in the record, the ALJ took note of Mr. Smithson's findings, but concluded that Mr. Smithson was "an unacceptable medical source" whose opinion was "not supported by the record" and therefore was entitled to little weight. (AR 15.) The only actual opinion of Mr. Smithson that the ALJ rejected, however, was his the diagnosis of mild mental retardation. Otherwise, the ALJ accepted Mr. Smithson's assessment of an anxiety disorder and avoidant personality disorder as supported by Plaintiff's testimony that he spends most of his time in his room. (AR 15.)

With respect to Mr. Smithson's assessment that Plaintiff was mildly mentally retarded, the ALJ found that the record provided more support for the conclusion that Plaintiff had borderline intellectual functioning. In reaching that determination, the ALJ took into account the following evidence: (1) the assessment of a school psychologist, conducted in 1981 when Plaintiff was 16 and 1/2 years old, indicating that Plaintiff had a full-scale I.Q. of 76 and was operating in the borderline to low-average range of intellectual functioning; (2) examining medical consultant Robert Sanner, M.D.'s observation that Plaintiff's intellectual functioning appeared "normal"; (3) the opinion of non-examining consultant, Victor O'Bryan, Ph.D. in May 2006 finding that Plaintiff had borderline intellectual functioning; (4) the opinion of non-examining mental consultant Robert Paul, Ph.D., in October 2006, that Plaintiff had moderate difficulties in maintaining concentration, persistence and pace and was capable of understanding and

---

[2] Plaintiff at one point appears to be arguing that the ALJ accepted a Dr. Sanner's statement that Plaintiff appeared to have "normal intellectual functioning." (Doc. No. 7-1, at 6.) This argument is refuted by the ALJ's unequivocal finding that that one of Plaintiff's severe impairments including his borderline level of intellectual function. (AR 10.)

remembering simple and low-level detailed tasks; (5) the fact that there was "no medical evidence suggesting an event which caused a reduction of mental functioning" between the time Plaintiff's IQ was tested when he was in high school and when he was tested by Mr. Smithson (AR 15); and (6) Mr. Smithson's assessment that Plaintiff had "reduced motivation," which suggested the possibility of malingering.

As the defendant points out, I.Q. scores alone do not conclusively lead to a diagnosis of mild mental retardation. *See, e.g.*, Am. Ass'n on Mental Retardation, *Mental Retardation: Definition, Classification, and Systems of Supports* 37 (9th ed. 1992) ("[L]ow IQ standard scores alone are not sufficient for diagnosis."); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 126 (6th Cir. 2003) ("Dr. Anderson agreed with Dr. Spence that Kamea was actually operating within the borderline range of intellectual functioning, although her intelligence test scores, standing alone, would indicate mental retardation."). Moreover, Plaintiff does not argue that Mr. Smithson was a treating source whose opinion is entitled to great weight. Even if he were, the ALJ clearly gave good reasons for rejecting in part Mr. Smithson's opinion, and the ALJ's determination that Plaintiff operates in the borderline range of intellectual functioning is clearly supported by substantial evidence in the record.

## V.      CONCLUSION

For the reasons set forth above, the Court finds Plaintiff's contentions that the ALJ erred are without merit. The ALJ applied the correct legal standards and her decisions are supported by substantial evidence in the record. Plaintiff's motion will therefore be denied and the Commissioner's determination that Plaintiff was not disabled at the time the ALJ issued her decision will be affirmed. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge